GARCÍA *v.* PRESTON ET AL.

APPEAL from the District Court of Humacao.

No. 590.—Decided May 9, 1911.

PHYSICIAN—RECOVERY OF FEES FOR PROFESSIONAL SERVICES—LACK OF CAUSE OF ACTION—PHYSICIAN · CALLED BY ONE PERSON TO ATTEND ANOTHER.—In an action instituted by a physician to recover fees for professional services rendered to a sick person at the request of another who is not obliged to furnish medical aid, that the complaint may state a cause of action it is necessary to state facts tending to show that the person who called the physician undertook to pay his fees, and, in the absence of such allegation, the complaint is insufficient.

ID.—RELATION OF EMPLOYER AND EMPLOYE—LIABILITY OF EMPLOYER FOR MEDICAL AID TO EMPLOYE.—The existence of the relation of employer and employe between the patient and the person who called the physician is not in itself sufficient for holding the employer who called the physician to the aid of his sick employe responsible, unless he makes the offer to compensate him for such services.

ID.—PHYSICIAN CALLED BY WIFE TO AID SICK EMPLOYE—LIABILITY OF HUSBAND.—The fact that the wife of the employer summoned the physician to

aid a sick employe does not make the husband, as a member of the conjugal partnership, responsible for the amount of the fees for the professional services rendered, unless an offer to compensate has been made.

The facts are stated in the opinion.

Messrs. *Hartzell* and *Rodríguez Serra* for appellants.

Messrs. *Aponte* and *Aponte* for respondents.

Mr. Justice Wolf delivered the opinion of the court.

This case in its essence involves the sufficiency of the complaint. The suit was originally filed in the Municipal Court of Naguabo and appealed to the District Court of Humacao. When the case was called for trial in the district court, the parties, after a discussion, agreed that the fourth paragraph of the complaint should be stricken out and that the court should then decide whether the complaint so amended stated a cause of action. The court found in favor of the complainant and rendered judgment against the defendants in the sum of $500, and costs.

The complaint to be reviewed as amended is as follows:

"The plaintiff herein, Casimiro García del Valle, by his counsel, the Attorneys, Aponte and Aponte, appears before the court and brings an action against Gustavo R. Preston and his wife, Emma R. de Preston, also mentioned above, and alleges:

"First. That the plaintiff is a surgeon, authorized to practice his profession, and has an office in the town of Naguabo within this municipal judicial district.

"Second. That about December 4, 1909, at the request of the defendant, Emma R. de Preston, he called at her dwelling house (which is also the home of the other defendant, Gustavo Preston), in the practice of his profession in order to attend an employe of the defendant (the said Gustavo Preston) who was suffering from a cancer in his bladder with uninterrupted hemorrhage. The patient in question was known by the name of Mr. Sheldon.

"Third. That the defendants, Gustavo Preston and Emma R. de Preston, are husband and wife, living together in a ward within the municipal district of Naguabo called 'Río Blanco,' and their dwelling house is situated at a good distance from the said town of Naguabo.

"Fifth. That the plaintiff, in compliance with the wishes of

Mrs. Preston, attended Mr. Sheldon until the 12th of December, 1909, sometimes remaining during a whole night by the bedside of the patient, and not one day passed without his working for the recovery of the patient in such a difficult case. The plaintiff alleges that, also at the request of Mrs. Preston, he accompanied the patient as far as San Juan, and he placed him in the Presbyterian Hospital there, having before and during the journey attended him with the greatest care.

"Sixth. That these professional services are worth at least the sum of $500, which sum the defendants have not paid him, notwithstanding his requests for payment thereof.

"Seventh. The plaintiff alleges that before having recourse to judicial proceedings, and in order to avoid any litigation, he reduced the amount charged for his services to $205, for which sum he had been ready to give an acquittance to the defendants, but they have refused to pay either of these sums.

"For the foregoing reasons he prays the court to render judgment in favor of the plaintiff and against the defendants for the said sum of $500 and costs. Humacao, 10th of January, 1910. (Signed) Aponte and Aponte, counsel for the plaintiff."

A complaint under our system must contain a statement of the facts in ordinary and concise language. (Code of Civil Procedure, sec. 103.) In a very early case in California Mr. Justice Field held that "facts only must be stated. This means facts as contradistinguished from the law, from argument, from hypothesis, and from the evidence of the facts." (*Green* v. *Palmer,* 15 Cal., 412.) In *Bank of Metropolis* v. *Guttschlick,* 14 Pet., 27, it was held that "* * * it is a rule in pleading that facts may be stated according to their legal effect." (See also *Marshall* v. *Baltimore and Ohio R. R. Co.,* 16 How., 328.)

The causes of action at common law are maintained in the code States, and in a complaint in most of these jurisdictions it is only necessary to state the facts that would have been necessary at common law. (*Budd* v. *Multnomah St. Ry. Co.,* 7 Pac., 102; *McAllister* v. *Kuhn,* 96 U. S., 87; *Nebeker* v. *Harvey,* 21 Utah, 373; 60 Pac., 1031, and cases

cited. Pomeroy's Code Remedies, sec. 347; *Stevens* v. *Mayor,. etc., of New York,* 84 N. Y., 305.)

In accordance with these principles, it has been generally held that when the law, under a common law or code system, would imply a promise to pay from given facts it was un-necessary to set forth such a promise in the complaint. Pome-roy's Code Remedies, sec. 432 *et seq.,* 4th Ed., p. 578 *et seq., Voight* v. *Brooks et al.* [Mont.], 48 Pac., 550; opinion by Mr. Justice Hunt and citing cases *Kraner* v. *Halsey,* 82 Cal., 210; *Wilkins* v. *Stidger,* 22 Cal., 236.)

Accordingly, a physician who in one of the States renders services to a man, in a suit against the latter need neither allege nor prove a promise. A *quantum meruit* would lie. (*Wilkins* v. *Stidger, supra; Dale* v. *Donaldson Lumber Co.,* 3 Am. St. Rep., 226, 2d Am. and Eng. Enc., vol. 22, 790; 30 Cyc., 1592.) The law would imply a promise to pay where a man rendered valuable services to another, and a physician in the United States is no exception. However, the current of authorities in the United States is that a mere request preferred to a physician that he should render services to a third person, sick or in distress, does not make the person who summons the physician responsible. (30 Cyc., 1597; 2d Am. and Eng. Enc., vol. 22, 790–791; *Cotnam* v. *Wisdom,* 12 L. R. A. [N. S.], 1090, and note. *Norton* v. *Rourke,* 18 L. R. A. [N. S.], 176, and cases. *Williams* v. *Brickrell,* 75 Am. Dec., 88; Wharton & Stillie's Medical Jurisprudence, vol. 3, sec. 467.) The leading case frequently cited is one to which we have not access, *Meisenbach* v. *Southern Coop-erage Co.,* 45 Mo. App., 232, but there is a quotation from it in *Norton* v. *Rourke* as follows: "The reason and policy of this rule are obvious.    *    *    *    When a person is dan-gerously wounded and perhaps unable to speak for himself, or suffering so much that he does not know how to do it, any person will run to the nearest surgeon in the performance of an ordinary office of humanity. If it were the law that the person so going for the surgeon thereby undertakes to

become personally responsible for the surgeon's bill through the long subsequent course of treatment many would hesitate to perform this office, and in the meantime the sufferer might die for the want of the necessary immediate attention. Nor is there a common and fair understanding that the person making the request, or ordering it to be made in behalf of the sufferer, under the circumstances, assumes responsibility for the surgeon's bill." In New York, and perhaps in a few other places, the rule is somewhat different. The cases in New York are reviewed in *Foster* v. *Meeks,* 18 Miscellaneous, 461. But there is apparently no case that holds that a mere request is sufficient to fix a liability. In *Bradley* v. *Dodge,* 45 How. Pr., 57, for example, the defendant left his business card with the clerk of the physician, requesting that the physician should visit the sick person immediately. In *Foster* v. *Meeks* there was evidence at the trial that the defendant would see to the payment. Nevertheless the New York cases are the exception, and it is generally necessary under the authorities cited for the plaintiff, at the trial at least, to show some circumstances other than a mere request to hold a defendant responsible where the benefit of the services has been derived by a third person.

We have been unable to find any case construing a complaint where the services of a physician, as here, were rendered to a third person. It is a rule in code pleading that only the ultimate facts should be averred. (*McCaughey* v. *Schuette,* 117 Cal., 224; *McAllister* v. *Kuhn,* 96 U. S., 87, *supra; Columbus H. V. & T. Ry. Co.* v. *Gaffney,* 61 N. E., 154.) If the complaint before us could be regarded as the statement of the ultimate facts necessary to a cause of action, perhaps it could be sustained. While no case has been found construing a complaint where services by a physician to a third person were involved, yet implied contracts for benefits received by third persons have been so construed. In *Conrad Nat. Bank* v. *Great Northern Ry. Co.,* 61 Pac., 3, the Supreme Court of Montana says: "Nor are the allegations

sufficient to support a judgment for food, board, and lodging, and goods, wares, and merchandise furnished to defendant's employes at its request. It is not necessary to allege a promise to pay where the facts as alleged imply a promise, as where the board, food, lodging, etc., are furnished to defendant upon request; but where the furnishing or delivery is to a third person, upon defendant's request, then, nothing further appearing, no promise on the part of the defendant to pay is implied; for a furnishing or delivery to a third party, though upon defendant's request, does not, as a matter of law, imply an undertaking by defendant to pay. The fact of delivery upon defendant's request is consistent with the idea that credit was extended to the person receiving the goods. The relation of employer and employe does not carry with it any obligation upon the employer from which the law implies a promise to pay for the benefits enjoyed by the employe only. Either the express promise should be alleged, or the facts from which it may be implied, as that the credit was extended to the employer, and not to the employe (Chit. Pl., pp. 308, 356), or the allegation should have been made generally that the food, board, lodging, and merchandise were furnished to the employer at its request (*Porter* v. *McClure,* 15 Wend., 187).

By a parity of reasoning and under the authorities we think that the complaint would be insufficient in the United States. The facts are not sufficient to imply a promise on the part of Mrs. Preston to pay. There is nothing in the complaint which shows that Mrs. Preston did anything more than would have been done by any other person with humane instincts. Mrs. Preston sent for the doctor to come to her house, where the patient was, requested him to attend to the sick man, urged him to stay at the bedside, and requested him to accompany the invalid to San Juan, but there is nothing in these statements to induce the idea that Mrs. Preston intended the doctor to look to her and her husband for payment. An ultimate fact in this case would be some state-

ment which in legal effect would show a meeting of minds. There is nothing set forth in the complaint which shows that the Prestons had such a relation with the invalid to justify the doctor in believing that they and not the patient were responsible. It is not alleged that Mrs. Preston's conduct would stop her from denying the contract. It is true that the complaint states that the patient was an employe of the defendant, Mr. Preston; but that fact alone does not place him within the responsibility of the conjugal society against which this action would seem to have been brought. With respect to a servant, it is held that in the absence of some stipulation a master is not under any legal obligation to furnish medical attendance for a servant who falls sick or is injured while engaged in his duties, and the cases are reviewed in a note to *The Kenilworth,* 4 L. R. A. (N. S.), 53. In *T. W. & W. R. R. Co.* v. *Rodríguez,* 47 Ill., 190, it was held that where an employe has been disabled and helpless in the service of the company there was no reason why that fact would not be sufficient consideration to support a promise to pay. In the case before us, however, there is no allegation of any kind of obligation to the employe, moral or otherwise, on the part of the Prestons. The fact that he was living in the same house with them would indicate, if anything, that he was not an ordinary employe.

The appellants at the hearing waived all questions of the power of Mrs. Preston to bind her husband and all questions of her responsibility as a married woman. Nevertheless, it is impossible not to take these admitted facts into consideration in determining whether a woman under these conditions, by the acts and words so set forth, intended a hiring of the physician or whether the physician was led by such acts or conduct into the belief that Mrs. Preston was seeking his services.

The facts set forth in the complaint do not set up a contract between the Prestons and the complainant. The sick man received the benefit of the physician's services, and

there is nothing to show that there was any consideration, moving to the appellants, as required for all contracts by sections 1241 and 1244 of the Civil Code. Appellee cites us to the amendment of section 1486 of the Civil Code. That section, however, only gives the professional man a right to the reasonable value of his services where there is no agreement for remuneration and a disagreement arises with respect to the same. It does not make a contract for the parties if they have made none themselves. Consequently, we must hold that a cause of action was not stated. The complainant, if he has a cause of action, should be able to set it forth. The case must be reversed and the objection presented by the defendant to the effect that the complaint did not state sufficient facts to constitute a cause of action is sustained, the plaintiff being permitted to amend his complaint within the term that may be fixed by the court below.

*Reversed.*

Chief Justice Hernández and Justices MacLeary and del Toro concurred.

Mr. Justice Aldrey did not take part in the decision of this case.